UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

KIMBERLY OAKES,

        Plaintiff,

v.

BRINK'S, INCORPORATED,

        Defendant.

**JURY TRIAL DEMANDED**

## COMPLAINT AT LAW

Plaintiff, Kimberly Oakes, by and through her attorneys, Caffarelli & Associates, Ltd., for her Complaint at Law against Defendant Brink's, Incorporated, states as follows:

### NATURE OF ACTION

1. This is a single-plaintiff action for damages and injunctive relief against Brink's, Incorporated ("Brinks," "Defendant" or "Company") for unlawful interference with Plaintiff's rights and retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA").

### JURISDICTION AND VENUE

2. This Court has original jurisdiction over all counts within this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 29 U.S.C. § 2617 (right to civil action by employees under the FMLA).

3. The unlawful employment practices described herein were committed within the State of Illinois, in the place of Ms. Oakes's employment in the Company's facility in Rockford, Illinois. Accordingly, venue in the Western Division of the U.S. District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Ms. Oakes was employed by Defendant at its Rockford, Illinois facility as a full-time employee from on or around January 7, 2013 until her termination effective on or about December 3, 2014.

5. Plaintiff was an "eligible employee" under 29 U.S.C. § 2611(2)(A).

6. Defendant is a Delaware corporation doing business in the State of Illinois, engaged in an industry affecting commerce, with facilities in Rockford, Chicago and Peoria, Illinois and Milwaukee, Wisconsin, among other locations across the United States.

7. At all times relevant, Defendant was an "employer" of Plaintiff within the meaning of 29 U.S.C. § 2611(4)(A).

## FACTUAL ALLEGATIONS

8. Ms. Oakes began working for Defendant as a Cash Logistics Processor on or about January 7, 2013. Throughout her employment, Ms. Oakes performed her job satisfactorily.

9. In the year prior to October 2014, Plaintiff worked for Defendant on a full-time basis, and had worked more than 1,250 hours.

10. Defendant employs more than 50 employees within a 75-mile radius of Ms. Oakes's workplace, which includes portions of the Chicago area, Milwaukee, and Madison, Wisconsin.

11. On or about July 3, 2014, Ms. Oakes fell off a step stool while she was working for Defendant and among other things cut her leg. Plaintiff's supervisor, Corey Schreiver, was present when Ms. Oakes sustained her injury, but he did not report the injury to the Company.

12. Ms. Oakes did not work the day immediately following her injury as it was Independence Day, but upon her return, Ms. Oakes reported the fall to her supervisor's manager, Michael Johnson. Ms. Oakes also reported to Mr. Johnson that the pain was getting worse.

2

13. Despite the pain she was in, Ms. Oakes worked her full shift on July 7 and 8, 2014.

14. After her shift on July 8, 2014, Ms. Oakes sought medical attention for the cut on her leg. While she was at the doctor's office, Ms. Oakes called Mr. Johnson to report that she was under a physician's instructions not to go to work the following day. During that telephone conversation, Mr. Johnson instructed Ms. Oakes to see doctors affiliated with Defendant.

15. The following day, on July 9 2014, Ms. Oakes, as instructed by Mr. Johnson, went to a doctor approved by Defendant. The doctor instructed Ms. Oakes to stay home from work for approximately one week to allow the cut on her leg to heal. Throughout the course of her treatment for the leg injury, Ms. Oakes continued to see the doctors affiliated with Defendant.

16. On or about July 15 or 16, 2014, approximately one week after her first appointment, Ms. Oakes returned to the doctor to report that her leg was not improving. Ms. Oakes was diagnosed with a Hematoma. The doctor instructed that she take an additional week off from work.

17. On or about July 21, 2014, Ms. Oakes returned to work on a reduced schedule.

18. On or about July 28, 2014, Ms. Oakes attempted to work a full-time schedule, but she experienced severe pain, and her doctor instructed that she return to a 6-hour work day.

19. During July and August 2014, Ms. Oakes continued to see her physician at least once per week to follow-up on her healing.

20. On or about August 11 or 12, Ms. Oakes's physicians had to drain her leg of fluids because an infection had developed.

21. On or about August 11, 2014, Ms. Oakes again returned to working 8-hour shifts.

22. Through September, October and November 2014, Ms. Oakes occasionally had to leave work in order to attend doctor's appointments. Ms. Oakes scheduled these appointments to

3

either be early in the morning or late in the evening so that she would only miss an hour or two of her shift. Ms. Oakes also has other physicians she has seen for years for various serious health conditions requiring ongoing treatment but unrelated to her leg injury. Ms. Oakes has seen one doctor approximately once per month and the other doctor approximately once every two months. Ms. Oakes also attempted to schedule appointments for these doctors around her work schedule to minimize the time away from her job duties.

23. In or about early November 2014, Ms. Oakes communicated with her supervisor, Mr. Schreiver, that she would need a specific day off in December to attend a doctor's appointment. Mr. Schreiver first approved the time off. However, when Ms. Oakes checked the schedule again a few days later, she noticed that she was scheduled despite being previously approved to have the time off.

24. When Ms. Oakes asked Mr. Schreiver why she was scheduled for the day when he previously approved her to have it off, Mr. Schreiver told her that he would not approve her for any more time off for appointments.

25. When Mr. Schreiver told Ms. Oakes that she could not have her previously approved day off, Ms. Oakes sent a text message to Mr. Johnson informing him of the situation. Mr. Johnson called Ms. Oakes later that day and informed her that someone else was already scheduled to have that particular day off and therefore she could not take it off.

26. The next day when Ms. Oakes came to work, she asked Mr. Schreiver what days her co-workers had off until the end of the year so that she could schedule her doctor's appointments around their planned vacation days. Mr. Schreiver then informed Ms. Oakes that she had used all of her vacation and sick time in attending doctor's appointments, and she would not be allowed to take any time off for the rest of the year to attend physician's appointments.

4

27. Ms. Oakes objected to this mandate, stating that it was not fair that she could not take any time off for legitimate doctor's appointments for the rest of the year, while two other employees were allowed to take leave. Mr. Schriever then told Ms. Oakes that her doctor's appointments were "not [his] problem."

28. When Ms. Oakes returned to her workstation, Mr. Schriever followed her and suggested that she "just quit." Ms. Oakes declined to quit and asked if Schreiver was threatening her. He told Ms. Oakes to either do her job or quit.

29. Later that day, Ms. Oakes was contacted by Mr. Johnson, and Mr. Johnson requested Ms. Oakes come to his office for a meeting. Mr. Johnson told Ms. Oakes that he had "heard there was a disturbance." Ms. Oakes told Mr. Johnson that she felt it was unfair that she was being denied time off to go to her doctor's appointments when others were allowed to do so. Mr. Johnson then informed Ms. Oakes that she was suspended for "all these outbursts" (or words to that effect) – a reference to her exchange with Mr. Schriever earlier that day.[1] Ms. Oakes inquired whether Mr. Schriever was also being disciplined for their exchange earlier that day, and Mr. Johnson did not answer but just paused for a while. Ms. Oakes said "I know, it's because he's a guy and I'm a girl" or words to that effect.[2] Mr. Johnson responded with "you need to go get your things." Mr. Johnson walked Ms. Oakes back to her work area and monitored as she gathered her things.

---

[1] During her exchange with Mr. Schriever, Ms. Oakes did use a profane word, though profanity was common at the workplace and no one has ever been disciplined for using profane language.

[2] Ms.Oakes intends to file an EEOC Charge and amend this Complaint, once she exhausts her administrative remedies, to bring a retaliation claim under Title VII.

5

30. On or about November 25, 2014, Ms. Oakes called Defendant's Human Resources representatives to inquire about the status of her suspension and left a message. Ms. Oakes never received a return phone call.

31. Ms. Oakes tried to call Human Resources Representative Jeff Durand on December 1, 2014, but his voicemail message said that he would be out of the office until December 6, 2014. Ms. Oakes left a voicemail inquiring how long she was suspended, but she never received a return phone call from Mr. Durand.

32. On or about December 3, 2014, Mr. Johnson called Ms. Oakes and informed her that her employment was terminated.

33. At no point did Defendant alert Ms. Oakes of her rights under the FMLA.

34. Ms. Oakes had not exceeded twelve weeks of leave as of December 3, 2014.

35. At no point did Defendant provide any documentation, paperwork, or the option to apply for FMLA.

36. Defendant did not disseminate any written policy to Plaintiff that notified her of her rights to medical leave or her right to reinstatement under the FMLA.

### COUNT I – FMLA INTERFERENCE

37. Plaintiff restates and incorporates Paragraphs 1 through 36 as though fully set forth herein.

38. The matters set forth in this Count arise from Defendant's violation of the FMLA, 29 U.S.C. § 2601, *et seq*.

39. Defendant interfered with Ms. Oakes's rights under FMLA by its failure to provide her with any notice or information that she might qualify for or be entitled to receive leave from work under the FMLA.

40. Defendant interfered with Ms. Oakes's rights by its failure to investigate whether she qualified for FMLA leave from work once Defendant received notice of her serious health condition.

41. Defendant denied Ms. Oakes's rights under the FMLA by terminating her.

WHEREFORE, Plaintiff Kimberly Oakes respectfully requests that this Court enter an order as follows:

- A. Declaring that the acts and practices by Brink's Incorporated, as described herein, constitute a violation of the FMLA;
- B. Enjoining and permanently restraining these violations of the FMLA;
- C. Awarding Plaintiff back wages and lost benefits due to Brink's Incorporated's violation of the FMLA;
- D. Awarding Plaintiff front pay;
- E. Awarding Plaintiff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);
- F. Awarding Plaintiff injunctive relief;
- G. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and
- H. Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

## COUNT II – FMLA RETALIATION

42. Plaintiff restates and incorporates Paragraphs 1 through 36 as though fully set forth herein.

43. The matters set forth in this Count arise from Defendant's violation of the FMLA, 29 U.S.C. § 2601, *et seq.*

Case header and body:

40. Defendant interfered with Ms. Oakes's rights by its failure to investigate whether she qualified for FMLA leave from work once Defendant received notice of her serious health condition.

41. Defendant denied Ms. Oakes's rights under the FMLA by terminating her.

WHEREFORE, Plaintiff Kimberly Oakes respectfully requests that this Court enter an order as follows:

- A. Declaring that the acts and practices by Brink's Incorporated, as described herein, constitute a violation of the FMLA;
- B. Enjoining and permanently restraining these violations of the FMLA;
- C. Awarding Plaintiff back wages and lost benefits due to Brink's Incorporated's violation of the FMLA;
- D. Awarding Plaintiff front pay;
- E. Awarding Plaintiff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);
- F. Awarding Plaintiff injunctive relief;
- G. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and
- H. Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

## COUNT II – FMLA RETALIATION

42. Plaintiff restates and incorporates Paragraphs 1 through 36 as though fully set forth herein.

43. The matters set forth in this Count arise from Defendant's violation of the FMLA, 29 U.S.C. § 2601, *et seq.*

44. Defendant retaliated against Ms. Oakes by terminating her employment, in violation of the FMLA.

WHEREFORE, Plaintiff Kimberly Oakes respectfully requests that this Court enter an order as follows:

    A. Declaring that the acts and practices by Brink's Incorporated, as described herein, constitute a violation of the FMLA;

    B. Enjoining and permanently restraining these violations of the FMLA;

    C. Awarding Plaintiff back wages and lost benefits due to Brink's Incorporated's violation of the FMLA;

    D. Awarding Plaintiff front pay;

    E. Awarding Plaintiff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

    F. Awarding Plaintiff injunctive relief;

    G. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and

    H. Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

**Plaintiff hereby requests a jury on all issues so triable.**

Dated: March 11, 2015                                                Respectfully submitted,
                                                                                KIMBERLY OAKES

Alejandro Caffarelli, #06239078
Alexis D. Martin, #06309619
Caffarelli & Associates, Ltd.                      By: /s/ Alejandro Caffarelli
224 S. Michigan Ave., Suite 300                Attorney for Plaintiff
Chicago, Illinois 60604
Tel. (312) 763-6880